**Daniel L. AMES, Sr.,**
**Petitioner/Appellant,**

v.

**Roger V. ENDELL, Commissioner of**
**Corrections for the State of Alaska,**
**Respondent/Appellee.**

**No. 87–4341.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 2, 1988.

Decided Sept. 15, 1988.

1442

Laura N. Cromwell, Seattle, Wash., for petitioner/appellant.

John A. Scukanec, Asst. Atty. Gen., Anchorage, Alaska, for respondent/appellee.

Before KOZINSKI, NOONAN and THOMPSON, Circuit Judges.

NOONAN, Circuit Judge:

Daniel L. Ames, Sr. brought a habeas corpus petition seeking release from confinement by the State of Alaska on the grounds that he had been denied effective assistance of counsel at his trial and on appeal. The district court gave judgment for the state. Ames appeals. We affirm.

## BACKGROUND

On October 30, 1981 Ames drove 140 miles from Anchorage to Talkeetna to pick up his boss, James Boyle, and Boyle's wife, Joanne, and return with them to Anchorage. Ames was driving a pickup truck that belonged to James Boyle. He frequently used the truck because Boyle had eye problems and did not drive himself.

Later in the day Ames and Boyle went into Talkeetna and by chance met a stranger, Rodney Hardy. The three men spent several hours together driving around town locating firewood and loading it into the pickup, which Ames continued to drive. All three men were drinking peppermint schnapps.

When they were ready to return to Anchorage, Ames drove to the cabin where Boyle and his wife had been staying. Ames and Boyle loaded the pickup. Hardy talked with a man named Clifford Tollefsen. Tollefsen noticed the Boyles getting into the pickup on the passenger side with Rodney Hardy in the middle and Ames walking around to the driver's side. According to Joanne Boyle, her husband did not allow strangers to drive the truck. She sat in her husband's lap. Hardy was to be dropped off en route in Wasilla.

The party drove 14 miles to the intersection of Spot Road and Parks Highway. The pickup there collided with a transport truck carrying a 50 ton backhoe. All of the persons in the pickup were thrown out upon the road. James Boyle later died as a result of his injuries.

Ames was treated at the scene and transported to the Alaska Native Hospital in Anchorage. He smelled strongly of alcohol and when tested was found to have an

intoxication level of .17 percent. An emergency medical technician asked him who was driving, and Ames replied that it was he. She asked if he was sure and he nodded his head affirmatively. Fifty minutes later Ames told a state trooper that he was not driving and could not remember the name of the man who was driving. Six weeks later, on the day he was indicted, Ames told another state trooper that he had not been drinking and that the driver had been James Boyle.

## PROCEEDINGS

Ames was indicted on charges of driving with a suspended license, Alaska Stat. 28.-15.291(a), and of manslaughter, Alaska Stat. 11.41.120(a)(1). He pleaded no contest to the license charge. At the trial for manslaughter he was represented by an assistant public defender, Lewis Gordon. Gordon, born in 1954, is a 1976 graduate, cum laude, of Harvard University. He received a J.D., cum laude, from the University of Connecticut in 1979 and then served as a law clerk to Chief Judge James A. von der Heydt of the United States District Court in the District of Alaska.

Gordon used the services of an investigator for the public defender agency, who secured the attendance of witnesses helpful to Ames' defense. Gordon also secured the services of Robert Rorick, an expert in auto mechanics. Gordon consulted Ames as to the defense that he would be presenting to the jury.

The strategy arrived at was that Ames himself would not testify. The defense would not contest the fact that Ames had been driving and that he had been drinking, but the defense would contend that his ability to drive had not been substantially impaired. The main defense was that Ames had been momentarily blinded by the sun as he approached the intersection and that his brakes failed. The defense called experts to testify regarding the angle of the sun at the intersection and other witnesses who testified that they had been blinded by the sun as they approached the intersection within minutes of the accident. The defense also presented Rorick to testi-

fy to the bad condition of the brakes on the pickup.

The jury found Ames guilty of manslaughter, and he was sentenced to eight years in prison.

With new counsel, Alan Higbie, Ames moved for a new trial on the grounds that Gordon had rendered ineffective assistance by failing to conduct an adequate investigation of the case, failing to consult with him in selecting an appropriate defense, and failing to secure a qualified accident reconstruction expert to testify in his behalf at trial. Ames' main claim was that Gordon should have investigated and presented as a defense the argument that Ames had not been driving the pickup when it crashed. The court held an evidentiary hearing at which both Ames and Gordon testified. Gordon stated: "I became convinced that the defense that Mr. Ames was driving, but that his driving was not reckless was the more accurate and far more appropriate defense."

At the conclusion of this hearing, Superior Court Judge Seaborn J. Buckalew made findings of fact and conclusions of law. He found as a fact that Ames had been consulted and agreed to the defense strategy proposed by Gordon and that the strategy was a "tactical decision" that was "an appropriate decision," made by an experienced criminal trial lawyer based on the facts he had to work with; further that Gordon's recommendation to Ames not to testify "was a reasonable decision based on the statements which had been made by the defendant prior to the trial." Finally, Judge Buckalew found as a fact that Gordon had "represented the defendant in a professional and competent manner throughout the trial."

Ames appealed from his conviction, his sentence and the denial of his motion for new trial. The Alaska Court of Appeals affirmed, stating that Ames had failed to establish incompetence of counsel. Ames also filed a petition for postconviction relief restating his ineffective assistance claim against Gordon and raising a similar claim against Higbie. Ames contended that Higbie failed to consult an accident reconstruc-

tion expert who would have cast doubt on whether Ames had been the driver of the pickup, thereby establishing that Gordon had rendered ineffective assistance at trial. Judge Buckalew gave summary judgment for the state.

Ames, now represented by a third lawyer, Joseph Kalamarides, moved for reconsideration and requested an evidentiary hearing to present new evidence of his innocence and of his lawyers' incompetence. Kalamarides had obtained an accident reconstruction expert, Harry Buccelli. Buccelli in a 1 page letter to Kalamarides, dated December 18, 1984, concluded from the position of the bodies after the accident that there was "a very good chance that Rodney E. Hardy was driving the vehicle."

Ames' motion for reconsideration was denied. The Alaska Court of Appeals affirmed the order dismissing Ames' application for post conviction relief. Ames then filed a pro se petition with the Alaska Supreme Court alleging that the prosecutor had suppressed material evidence and that various witnesses had committed perjury, but he did not raise the claim of ineffective assistance of counsel. Ames' petition for a hearing was denied.

On April 7, 1986 Ames, represented by a fourth lawyer, filed a petition for a writ of habeas corpus in the United States District Court for the District of Alaska claiming ineffective assistance from Gordon and Higbie. The state's response conceded that Ames had exhausted his state remedies. After a hearing before a magistrate and oral argument before the district court, the district court dismissed Ames' petition and granted summary judgment for the state. Ames then appealed to this court.

## ANALYSIS

■ The state argues that Ames may not be heard in this court because he has not exhausted his state remedies—he did not present his claim of ineffective assistance of counsel to the Alaska Supreme Court, and he now presents evidence—the report of the accident reconstruction ex-

pert—that was not presented to the state courts.

When the state answers a habeas corpus petition, it has a duty to advise the district court whether the petitioner has exhausted all available state remedies. *See Granberry v. Greer*, 481 U.S. 129, 107 S.Ct. 1671, 1675, 95 L.Ed.2d 119 (1987). If the state fails to object to failure to exhaust, it is within this court's discretion to treat the failure as a waiver and proceed to review the merits of the petition. *See Granberry*, 481 U.S. at ——, 107 S.Ct. at 1675; *Grooms v. Keeney*, 826 F.2d 883, 885 (9th Cir.1987). The state in this case conceded that Ames had exhausted his state remedies when it responded to the federal magistrate's order to show cause. We therefore will not consider the state's nonexhaustion arguments at this late stage.

■ We proceed to the merits of the appeal. Deciding whether a defendant was incompetently defended, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). Gordon's tactical decisions were reasonable. Ames' initial admission in the hospital that he had been driving the pickup, his lie about his drinking and his lie about Boyle driving at the time of the accident, the testimony of Joanne Boyle as to her husband not permitting strangers to drive, and the evidence of Tollefsen as to the arrangement of the parties on the front seat, made a strong case against any strategy that would have tried to cast the blame on Hardy.

■ Counsel does have the duty to conduct reasonable investigation. *Strickland, supra* at 691, 104 S.Ct. at 2066. A lawyer is not a passive participant in preparation for a trial: he must prepare. But his duty of investigation is determined by the facts he knows. *Id.* Even if Gordon assumed that Ames' admission to the emergency medical technician was the babble of a man in shock, Gordon still had no reason to believe that Ames could testify who was driving. He was under no constitutional

obligation to put Ames on the stand to commit perjury. *Nix v. Whiteside,* 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986). He was under a professional obligation not to do so. Alaska Code of Professional Responsibility DR 7–102(A)(4) (1982). At best, Ames as a truthful witness could have testified he did not know. The defense that he was not at the wheel would have had to rest on a hypothetical construction by a paid expert whom the jury would have had to believe rather than concrete convergent evidence pointing to Ames as the driver. When Ames agreed to the defense based on his driving the truck, Gordon was not under any obligation to pursue an investigation into what hypothetically might have happened but which Gordon and his client agreed had not happened.

█ With respect to his claim against Higbie, his second attorney, Ames likewise fails to surmount the presumption of reasonable professional assistance. Our decision on Higbie's performance follows *a fortiori* from our decision on Gordon's performance. If Gordon acted appropriately in not developing evidence from an accident reconstruction expert, then Higbie acted appropriately in not obtaining such evidence at the hearing.

Since June 1986 there have been 12 cases before the Court of Appeals of Alaska in which claims of incompetence on the part of counsel have been raised as a ground for reversing a criminal conviction. These claims are always serious. On the one hand they always raise a constitutional challenge to the conviction: a defendant without competent counsel is a defendant without counsel. On the other hand they always involve disparagement of the professional abilities of the defendant's trial counsel: in a matter involving the liberty or even the life of the client, counsel is charged with having failed to meet an elementary standard. In the words of *Strickland,* counsel has failed to act as counsel. *Strickland, supra,* 466 U.S. at 687, 104

S.Ct. at 2064. In the present case Ames has failed to show that either Gordon or Higbie fell so low. They performed practically and professionally, competently and conscientiously.

AFFIRMED.